RESERVE INSURANCE COMPANY, appellant, v. JAMES ALDEN
JOHNSON and STATE AUTOMOBILE AND CASUALTY
UNDERWRITERS, appellees.

No. 52315.

(Reported in 150 N.W.2d 632)

MAY 2, 1967.

John D. Randall, John D. Randall, Jr., and John R. Hughes, of Cedar Rapids, for appellant.

James W. Crawford and Gene V. Kellenberger, of Cedar Rapids, for appellees.

RAWLINGS, J.—Plaintiff-insurer brought law action to recover contribution from defendants of half the sum paid by plaintiff in settlement for personal injuries and automobile damage resulting from a three-vehicle collision.

The petition alleges the accident, causing damage to a third motorist, John Richard Petchulat, was the proximate result of negligence on the part of plaintiff's insured, Roger W. Northcott, and defendant James Alden Johnson, insured by State Automobile and Casualty Underwriters, second party defendant.

Plaintiff paid Petchulat $1275, securing from him a release of both Northcott and Johnson.

By Division I of its petition plaintiff asks contribution from defendant Johnson.

Division II asserts defendant-insurer, State Automobile and Casualty Underwriters, agreed to contribute half the amount paid Petchulat in settlement.

For answer both defendants alleged a general denial.

Trial to the court resulted in a directed verdict for each defendant at the close of plaintiff's evidence, from which the latter appeals.

We reverse.

The record discloses Northcott, driving an automobile in a westerly direction, entered a traffic control free intersection of two streets in Cedar Rapids. At the same time defendant Johnson, headed north, drove his car into the same intersection. These two vehicles collided.

Johnson's car continued on, swung around, and struck Petchulat's vehicle at a point 50 or 60 feet north of the intersection near the westerly curb.

The accident occurred July 20, 1961, and July 26 Dale M. Thompson, an experienced adjuster engaged by plaintiff-company, arrived to conduct an investigation. He discovered Petchulat's injuries were potentially serious and damage to his car extensive. Thompson was also advised to the effect defendant Johnson had liability insurance with defendant State Auto.

This investigator returned to Fort Dodge and July 28, 1961, had a long-distance telephone conversation with Larry Griffith, claims manager for State Auto in its Des Moines office. All known facts relative to the accident were related to Mr. Griffith.

Thompson suggested a quick settlement with Petchulat to avoid a possible serious bodily injury claim. Griffith agreed it would be well to compromise and settle.

In this connection the pertinent part of Thompson's testimony is as follows:

"Q. And was there anything said about—you said compromise—was there anything said about State Auto on contributing to this settlement? A. Very definitely, yes.

"Q. And what was your understanding or what was said —what was said in regard to State Auto contributing to any settlement? A. Regarding the settlement, if I would go down and obtain the settlement and work it down, I was anticipating. At that time Petchulat had made a claim in the amount of $1350 but I did not make settlement due to the fact that we certainly did not have sole liability so I went back to Fort Dodge to con-tact State Auto first. *And we discussed 50% contribution on the part of both companies in obtaining the settlement. This was agreed,* and I immediately wrote a letter." (Emphasis supplied.)

Immediately thereafter, on the same date, Thompson wrote *and in the regular course of business mailed a letter to Griffith in Des Moines* purportedly confirming their conversation.

Settlement with both Mr. and Mrs. Petchulat was then made by Thompson and August 10, 1961, he claims to have so *informed Griffith by letter*.

To the extent here relevant it is contended Griffith was by this second letter advised of the settlement, and demand made for payment of $637.50 by State Automobile and Casualty Underwriters.

This is the state of the record in connection with the mailing of any letters by Thompson to Griffith.

Thompson's testimony discloses he received correspondence from Griffith a short time after the second letter had been sent, but the nature or content of such communication is not disclosed. Apparently neither Griffith nor any other person representing defendant State Auto ever replied to Thompson's letter of July 28.

I. Plaintiff offered in evidence copies of both letters claimed to have been forwarded by Thompson to Griffith but objections made were sustained by the trial court.

Under the circumstances we find the exclusion of these exhibits was proper.

In the case of Roshek Realty Co. v., Roshek Bros. Co., 249 Iowa 349, 356, 87 N.W.2d 8, this court said: "Proof of mailing a statement or letter properly addressed and otherwise conforming to postal laws and regulations concerning postage raises a presumption of fact it was received. The different things which *must* be shown to give rise to the presumption are listed in Central Trust Co. v. City of Des Moines, 205 Iowa 742, 746, 218 N. W. 580, 582, and Forrest v. Sovereign Camp W. O. W., 220 Iowa 478, 480, 261 N. W. 802. See also Gregory v. Kirkman Consol. Ind. Sch. Dist., 186 Iowa 914, 921, 922, 173 N. W. 243, 246 ('* * * it *must* be clearly shown that the facts upon which the presumption rests actually exist.') * * *." (Emphasis supplied.)

Turning now to Central Trust Co. v. City of Des Moines, supra, we find the elements necessary to create a presumption of delivery of a communication through the mail are: "(1) the necessary evidence of the contents and execution of the paper; (2) evidence that it was inclosed in a wrapper, or otherwise prepared for transmission through the mail; (3) evidence of the correct post-office address of the person to be charged with receiving it; (4) evidence that the package containing the document was properly addressed; (5) evidence that postage was prepaid; and (6) evidence that it was deposited in the mail for transmission."

It is apparent plaintiff failed, either in whole or in part, to satisfactorily establish elements 2 through 6 relative to each letter claimed to have been sent by Thompson to Griffith. And where as here the necessary foundation is lacking no presumption of delivery can be indulged.

In support hereof see also Seevers v. The Cleveland Coal Co., 158 Iowa 574, 594–596, 138 N.W. 793, Ann. Cas. 1915D 188; 31A C. J. S., Evidence, section 136, page 287; and 29 Am. Jur.2d, Evidence, sections 195, 196, pages 249, 250.

II. Defendant State Auto, in moving for a directed verdict, contended the evidence was insufficient to support any alleged agreement by it to contribute half the amount paid Petchulat in settlement.

While the record leaves much to be desired it still remains we must resolve all doubts in favor of submission of the

case to the trier of the facts. Bunn v. Standard Oil Co., 251 Iowa 7, 9, 99 N.W.2d 436; Clark v. Umbarger, 247 Iowa 938, 942, 75 N.W.2d 243; 89 C. J. S., Trial, section 595(d), page 396; and 53 Am. Jur., Trial, sections 394, 395, pages 316, 317.

Furthermore the truth of the testimony presented by the plaintiff stands admitted as against a motion to direct. Crouch v. Pauley, 254 Iowa 14, 15, 16, 116 N.W.2d 486.

■ And in Erwin v. Erwin, 251 Iowa 1344, 1348, 105 N.W. 2d 489, this court said: "It is unnecessary that the proof of the oral contract be undisputed or be established as an absolute certainty. Reasonable certainty is sufficient." See also Schofield v. Schofield, 260 Iowa 565, 149 N.W.2d 810.

■ Plaintiff's testimony, presented and standing without objection or motion to strike, discloses Thompson, acting on behalf of plaintiff-insurer, talked with Griffith representing defendant-insurer, and that in the course of this conversation these parties discussed 50 percent contribution on the part of both companies in obtaining settlement, which was agreed.

Despite any possible susceptibility of this testimony to a proper and timely objection it must, for the purpose of the moment, be deemed admitted.

We conclude the trial court erred in directing a verdict for defendant State Automobile Casualty and Underwriters.

III. Defendant Johnson, in moving for a directed verdict, contended as follows: (1) the evidence failed to disclose plaintiff's insured, Northcott, was negligent, and (2) plaintiff neither pleaded nor proved John Richard Petchulat was free from contributory negligence.

The points here raised are traceable to our landmark case of Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A. L. R.2d 1354. See also Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303; Hawkeye-Security Ins. Co. v. Lowe Constr. Co., 251 Iowa 27, 99 N.W.2d 421; Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 107 N.W.2d 682; and Chicago, R. I. & P. R. Co. v. Chicago & N. W. Ry. Co., 280 F.2d 110.

■ IV. Dealing first with the matter of Northcott's negligence, we are unable to agree with the position taken by defendant Johnson.

As previously disclosed Northcott drove at 20 to 25 m.p.h. into a no traffic controlled, vision obscured intersection.

Involved here are lookout, control, speed and ordinary care. See in this regard rule 344(f) (10) (16) (17), R. C. P.; Turner v. Detrick, 257 Iowa 1197, 136 N.W.2d 253; O'Haver v. Kraklio, 257 Iowa 1169, 136 N.W.2d 293; Mineke v. Fox, 256 Iowa 256, 126 N.W.2d 918; Mass v. Mesic, 256 Iowa 252, 127 N.W.2d 99; Goman v. Benedik, 253 Iowa 719, 113 N.W.2d 738; Kuehn v. Jenkins, 251 Iowa 718, 100 N.W.2d 610; and 10 Drake Law Review 113.

The evidence discloses a sufficient fact issue as to the negligence of Northcott.

V. Regarding the matter of pleading and proving absence of contributory negligence on the part of Petchulat, we again reach a conclusion contrary to that apparently adopted by the trial court.

A case in point is Reed v. Harvey, 253 Iowa 10, 13, 110 N.W. 2d 442, where we said:

"When a doubtful pleading is attacked by motion, demurrer or, as permitted by rule 72, Rules of Civil Procedure, in the answer, it will be resolved against the pleader. But after issue is joined without raising any 'points of law appearing on the face of the petition' (rule 72), it will be liberally construed in order to effectuate justice between the parties. The pleader will be accorded the advantage of every reasonable intendment, even to implications, regardless of technical objections or informalities. This is the effect of rule 67.

"Permitting the introduction of testimony on an issue not specifically pleaded obviates the necessity of its formal presentation. Where, as here, parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case."

With reference to the foregoing see also True v. Larimore, 255 Iowa 451, 456, 123 N.W.2d 5; In re Durant Community School Dist., 252 Iowa 237, 248, 106 N.W.2d 670; and Wilson v. Corbin, 241 Iowa 593, 604–606, 41 N.W.2d 702.

■ In the case now before us the parties proceeded to trial with no challenge by defendant Johnson as to plaintiff's pleading, and any objection to the matter of failure to assert Petchulat's freedom from contributory negligence came too late to support a motion for directed verdict.

The evidence as to Petchulat's conduct immediately prior to the accident discloses he was driving his power equipped Plymouth automobile in a southerly direction at about 5 to 10 m.p.h. on his right side of the street. This car was either slowing down or parking near the west curb at time of impact of the Johnson and Northcott cars. In addition the Petchulat vehicle was 50 or 60 feet north of the accident involved intersection when the front of it was struck by the rear end of the Johnson automobile.

Petchulat's freedom from contributory negligence was tried as an issue with the same force and effect as though it had been alleged by plaintiff. The challenge by defendant Johnson came too late to be of any effect. Also the evidence discloses a prima facie case of negligence on the part of Northcott, and Petchulat's freedom from contributory negligence.

VI. In substance the trial court resolved all fact issues presented as a matter of law. It erred in so doing.

We have no alternative but to reverse and remand for reinstatement of plaintiff's actions against each defendant and further proceedings in accord herewith.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.