**NORTHWESTERN NATIONAL INSURANCE COMPANY and Cady Insurance Agency, Appellants,**

**v.**

**RAID QUARRIES CORPORATION et al., Appellees.**

No. 2–57449.

Supreme Court of Iowa.

Jan. 19, 1977.

Hirsch, Wright, Link & Adams, by Gene R. Krekel, Burlington, for appellants.

Dailey, Dailey, Ruther, Bauer & Schulte, by John Dailey and David A. Hirsch, Burlington, for appellees Raid Quarries Corp. and Jack A. Schroder Co., Inc.

C. R. S. Anderson, Centerville, Herrick, Langdon, Belin, Harris, Langdon & Helmick by Herschel G. Langdon, Des Moines, and Cray, Walter, Cray & Loeschen, Burlington, for appellee Iowa Southern Utilities Co.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and REYNOLDSON, JJ.

RAWLINGS, Justice.

Law action by plaintiffs, Cady Insurance Agency (Cady) and its insurer, Northwestern National Insurance Company (Northwestern), against defendants, Iowa Southern Utilities Company (ISU), Raid Quarries Corporation and Jack A. Schroder Company, Inc. (Raid-Schroder), for damages caused by a building fire allegedly resulting from defendants' negligence. Trial to the court resulted in an adjudication adverse to plaintiffs and they appeal. We affirm.

In October, 1969, Raid-Schroder entered into an agreement with the State of Iowa for excavation and grading work by the former in connection with a Highway 534 construction project.

November 6, 1969, Raid-Schroder's employee drove a bulldozer over a primary gas regulator pit in Burlington thereby damaging the mechanism and causing an ov-

erpressure condition in the low pressure distribution system there operated by ISU. Cady was thereby served.

Within a few hours the Burlington Fire Department received a total of 77 alarms. Fire Chief Mark Zaiser opined all alarm-related fires were caused by the aforementioned overpressure condition.

No fire immediately ensued at the Cady building. However, Charles Rucker and Louis Fischer, working at the Cady office, testified they then heard a "hissing noise" in an overhead furnace. In response to cautionary instructions aired over local radio they turned off the gas at a downstairs meter. As stated by these witnesses, the hissing stopped immediately.

November 7, 1969, two employees from ISU turned on the gas and relit the furnace. Rucker and Fischer testified it was thereafter unusually warm in the Cady office, but both also conceded it was warm outside. Fischer said the office cooled down after he readjusted the thermostat.

November 8, 1969, an early morning fire substantially damaged Cady's building.

Plaintiffs and 48 other parties brought action against these defendants. In all other cases the damage-causing fires occurred November 6, 1969. In count one of all petitions, the parties alleged specific negligence on the part of both defendants. In addition plaintiffs Cady and Northwestern pled these specifications of negligence against ISU:

"(m) In failing to properly inspect the gas pressure regulator, the temperature limit control and the gas control valve prior to relighting the pilot light of the furnace in the Cady Insurance Agency.

"(n) In failing to properly replace the sheet metal cover over the gas control valve and burner manifold assembly after relighting the pilot light in the furnace.

"(o) In failing to inspect the furnace in the Cady Insurance Agency prior to relighting when Iowa Southern Utilities Company knew or had reason to know that said furnace had been damaged by the gas pressure surge."

These plaintiffs also sought relief under the res ipsa loquitur and strict liability doctrines.

Trial court concluded defendants' concurrent negligence proximately caused all the November 6 fires. Significantly, however, the court found plaintiffs Cady and Northwestern failed to establish a requisite causal connection between defendants' alleged negligent acts and the November 8 Cady fire. Trial court also denied plaintiffs recovery under res ipsa loquitur and strict liability. As aforesaid, plaintiffs' appeal followed.

They here contend trial court erred in (1) finding plaintiffs failed to establish specific negligence-related proximate cause; (2) concluding plaintiffs were not entitled to recover under the doctrine of res ipsa loquitur; and (3) holding the strict liability theory inapplicable.

I. SPECIFIC NEGLIGENCE—PROXIMATE CAUSE.

■■■ This law action is reviewed on errors assigned. Trial court's findings have the effect of a jury verdict. If supported by substantial evidence they are binding on us and will not be disturbed. Furthermore, the evidence is viewed in a light most favorable to the judgment and in case of ambiguity we construe to uphold rather than defeat it. See *Nora Springs Cooperative Company v. Brandau*, 247 N.W.2d 744 (Iowa 1976); *Hayes v. Hettinga*, 228 N.W.2d 181, 182 (Iowa 1975); Iowa R.Civ.P. 344(f)(1). But we are not bound by trial court's determinations of law. See *Nora Springs Cooperative Company v. Brandau, supra*; *Sand Seed Service, Inc. v. Bainbridge*, 246 N.W.2d 911 (Iowa 1976); *Whewell v. Dobson*, 227 N.W.2d 115, 117 (Iowa 1975). And this court will neither weigh the evidence nor pass on credibility of witnesses. See *Whewell v. Dobson, supra*; *DeYarman v. State*, 226 N.W.2d 26, 27 (Iowa 1975).

Referring to proximate cause: "The actor's negligent conduct is a legal cause of

harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." *McCleeary v. Wirtz,* 222 N.W.2d 409, 413 (Iowa 1974). See also 57 Am.Jur.2d, Negligence, § 147.

■ Furthermore, the instrumentality which caused the involved fire must be established before a causal connection can be made regarding any alleged negligent act and in this the burden of proof was upon plaintiffs. See *Grings v. Great Plains Gas Co.,* 260 Iowa 1309, 1315, 152 N.W.2d 540 (1967); *Rauch v. Des Moines Elec. Co.,* 206 Iowa 309, 312, 218 N.W. 340 (1928); Iowa R.Civ.P. 344(f)(5); 1 Jones on Evidence, § 5:6 (Gard 6th ed. 1972); 57 Am.Jur.2d, Negligence, § 147; 38 C.J.S. Gas § 47c(1), at 745. As summarized by Prosser, The Law of Torts, § 41 at 241 (4th ed. 1971):

"He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; * * *."

■ It is also understood that even though negligence be established the existence of proximate cause does not necessarily follow. See *DeYarman v. State,* 226 N.W.2d at 28.

■ Of course, proof of causal connection may be by either direct or circumstantial evidence but in event the latter is, as here, solely relied upon, "it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence; however, it is generally for the trier of fact to say whether circumstantial evidence meets this test." *Wiley v. United Fire & Casualty Company,* 220 N.W.2d 635 (Iowa 1974). See also *Rauch v. Des Moines Elec. Co.,* 206 Iowa at 312–313, 218 N.W. 340.

Noticeably, expert testimony establishing a requisite causal connection is here absent.

Had such evidence been presented it could have been particularly helpful in supplying the negligence factor and necessary causation link. In fact, this is probably a case in which both tort and causal connection essentially required foundational proof by presentation of expert opinion testimony. See 2 Harper and James, The Law of Torts, § 20.2, at 1116–1119 (1956); cf. *McCleeary v. Wirtz, supra.* Compare *Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 323 (Iowa 1974).

Plaintiffs assert, however, the testimony with respect to origin of the fire, though circumstantial, sufficed to remove such issue from the realm of speculation and amply supported a finding that defendants' negligence was a proximate cause of the fire. We are not so persuaded.

■ In essence, trial court correctly held proximate cause could not be inferred from mere happening of the fire. See *Ellingson v. Kramer,* 255 Iowa 1257, 1262–1263, 125 N.W.2d 777 (1964). See generally *Trimbo v. Minnesota Valley National Gas Company,* 260 Minn. 386, 110 N.W.2d 168 (1961); 26 Am.Jur.2d, Electricity, Gas, and Steam, §§ 224–225.

Trial court also found:

"There was no testimony from any witness that the furnace was in any manner malfunctioning, and there was no evidence whatever as to how or in what manner the furnace was relit other than two people from Iowa Southern Utilities Company using a ladder raised the false ceiling and relit the furnace and left. * * *

" * * * Certainly, the mere happening of the fire does not establish a causal connection * * *."

This finding is adequately supported by the record.

Under existing circumstances, we now conclude no evidence was adduced disclosing (1) the November 6, 1969, bulldozer incident was a proximate cause of the Cady fire two days later or (2) relighting of the furnace was a proximate cause of such conflagration. Proximate cause was not established as a matter of law.

Plaintiffs' first assigned issue is without merit.

## II. RES IPSA LOQUITUR.

In an apparent effort to bridge the causation gap, plaintiffs invoke the res ipsa loquitur doctrine.

■ At the outset it is well settled this precept may not be applied in aid of asserted specific negligence. See *Eaves v. City of Ottumwa*, 240 Iowa 956, 972, 38 N.W.2d 761 (1949).

■ Also, as articulated in *Palleson v. Jewell Cooperative Elevator*, 219 N.W.2d 8, 13 (Iowa 1974):

"The doctrine of res ipsa loquitur is only a rule of evidence, not of substantive tort law. *Wiles v. Myerly*, 210 N.W.2d 619, 624 (Iowa 1973).

"Under this doctrine, where 1) injury is caused by an instrumentality under the exclusive control of defendant, and 2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the *happening of the injury permits but does not compel an inference defendant was negligent. Thompson v. Burke Engineering Sales Co.*, 252 Iowa 146, 148–49, 106 N.W.2d 351, 353 (1960); *Eaves v. City of Ottumwa*, 240 Iowa 956, 969, 38 N.W.2d 761, 769 (1949).

"*The res ipsa theory does not raise any inference as to what did occasion the injury-causing event.* If the necessary causal evidence is circumstantial, it must make plaintiffs' theory not merely possible, but more probable than any other theory based on the evidence. Rule 344(f)(16), Rules of Civil Procedure; *Wilson v. Paul*, 176 N.W.2d 807, 809 (Iowa 1970).

"It is not required for application of the doctrine to prove defendant had control of the instrumentality when the injury occurred. It is enough to show control at time of the alleged negligent act, provided plaintiff proves there was no change in condition of the instrumentality, and no intervening act, which could reasonably have caused the event resulting in the injury. *Pastour v. Kolb Hardware, Inc.*, 173 N.W.2d 116, 125 (Iowa 1969); *Sweet v. Swangel*, 166 N.W.2d 776, 778 (Iowa 1969); *Thompson v. Burke Engineering Sales Co.*, supra, 252 Iowa at 149–50, 106 N.W.2d at 353." (emphasis supplied).

See generally *Cronin v. Hagan*, 221 N.W.2d 748, 751–753 (Iowa 1974); *Mickelson v. Forney*, 259 Iowa 91, 94–95, 143 N.W.2d 390 (1966).

Even more to the point regarding causation is this statement in *Wilson v. Paul*, 176 N.W.2d at 809:

"In order for the doctrine of res ipsa loquitur to apply, *plaintiff must establish the cause of the fire.* ' * * *. [T]he doctrine of res ipsa loquitur does not raise any [inference] as to what did occasion the injury; but, after the evidence has established the thing which did occasion the injury, then under certain circumstances this doctrine will raise [an inference] of negligence.' *Orr v. Des Moines Elec. Light Co.*, (1928), 207 Iowa 1149, 1155, 222 N.W. 560, 562.

"' * * * [T]he mere occurrence of a fire with resultant injuries does not permit an inference of negligence', *Dodge v. McFall* (1951), 242 Iowa 12, 15, 45 N.W.2d 501, 503, but 'where the circumstances under which the fire originated and spread are such as to show that defendant or his servants were negligent in connection therewith', the doctrine may apply. 65A C.J.S. Negligence § 220.25, p. 617. 35 Am.Jur.2d 630, Fires § 51. See *Connecticut Fire Insurance Co. v. Gusman* (1966), 259 Iowa 271, 144 N.W.2d 333, 336; *John Rooff & Sons, Inc. v. Winterbottom* (1957), 249 Iowa 122, 132–133, 86 N.W.2d 131, 138." (emphasis supplied).

Referring now to *Tedrow v. Des Moines Housing Corp.*, 249 Iowa 766, 769, 87 N.W.2d 463, 465 (1958), we find this cogent observation:

"The mere happening of a fire with the resultant injuries raises no presumption of negligence. *Dodge v. McFall*, 242

Iowa 12, 15, 16, 45 N.W.2d 501, 502, and cases cited. The burden is of course upon one who seeks to recover because of the negligent kindling of a fire to prove such negligence, and this is equally true whether he relies upon the evidentiary doctrine of res ipsa loquitur or upon specific acts."

Because of its pertinency this from A. Loth, Res Ipsa Loquitur in Iowa, 18 Drake L.Rev. 1, 7 (1968) is also noted:

"Fires seem to be in a class by themselves. Basically, the cases hold that the 'experience' factor forbids use of the res ipsa inference merely because defendant's instrumentality catches fire. Plaintiff must prove that a 'negligent' fire arose from something which defendant controlled, and *this requires evidence of the precise cause of the blaze.*" (emphasis supplied).

In the present case trial court determined:

"Really, what the plaintiff, Cady, is saying in this instance is simply that an over-pressure condition occurred in the low pressure distribution system on November 6, 1969, and they shut off their gas; that on November 7 in the morning, the furnace was relit and the gas turned on by the Defendant, I.S.U.; that on the morning of November 8, a fire occurred, and that in some manner it had to occur because of the negligence of either the Defendants, Raid/Schroder, or the Defendant, I.S.U., or both. The record is devoid of any evidence of a causal connection between the fire on November 8 and the conduct of the Defendants, Raid/Schroder, and the Defendant, I.S.U. which resulted in the over-pressure condition on November 6, 1969. This Court is satisfied that the doctrine of res ipsa loquitur has no application in this case."

It is to us apparent trial court effected a factual determination and attendantly considered but refused to apply the aforesaid doctrine.

In brief, we now hold Cady and Northwestern did not establish res ipsa loquitur

as a matter of law. See *Clippinger v. Becker,* 220 N.W.2d 879, 881 (Iowa 1974).

Plaintiffs' second assignment provides no basis for a reversal.

## III. STRICT LIABILITY.

 Finally entertained is the claim of error that trial court determined strict liability in tort was instantly inapplicable.

At the outset plaintiffs' reliance on *Davis v. L & W Construction Company,* 176 N.W.2d 223 (Iowa 1970) and *Blackman v. Iowa Union Elec. Co.,* 234 Iowa 859, 14 N.W.2d 721 (1944), is misplaced. Davis involved liability absolute or without fault (blasting). Parenthetically, it has been said that concept is not to be confused with strict liability in tort. See *Passwaters v. General Motors Corporation,* 454 F.2d 1270, 1277, n.7 (8th Cir. 1972); E. Davis, Relationship of Contribution and Indemnity to Strict Liability in Tort, 15th Annual Fall Symposium, Iowa Academy of Trial Lawyers (1976). And, in *Blackman,* this court distinguishably held *specific negligence* and *res ipsa loquitur* were applicable where the source of a damage causing gas leakage was specifically identified. We also there stated, 234 Iowa at 862, 14 N.W.2d at 723: "[A] gas company is not liable as an insurer for injuries sustained as the result of the escape of gas. It can only be held liable for its own negligence." See also 26 Am. Jur.2d, Electricity, Gas, and Steam, § 195.

Additionally, no authority has been cited which can be deemed to support application of strict liability to the problematic factual situation here presented. See generally Prosser, The Law of Torts, ch. 13 at 492–505. Compare Restatement, Second, Torts, §§ 519–524 (Tentative Draft, 1964). However, that question need not be instantly resolved because plaintiffs, in any event, again fall short of essential proof (1) as to existence of a reasonably certain fire-causing defect or conduct, or (2) that any such defect or conduct was a proximate cause of the involved injury. See generally *Tedrow v. Des Moines Housing Corp.,* 249 Iowa at 769–771, 87 N.W.2d 463; *W. Carmichael, Strict Liability in Tort—An Explo-*

*sion in Products Liability Law,* 20 Drake L.Rev. 528, 543–547 (1971); F. Harper, Liability Without Fault and Proximate Cause, 30 Mich.L.Rev. 1001, 1009–1013 (1932); 63 Am.Jur.2d, Products Liability, § 135; 72 C.J.S. Supp. Products Liability § 30; Annot., 13 A.L.R.2d 1057, 1066, 1075.

The third issue raised by plaintiffs is devoid of substance.

AFFIRMED.